IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALPHONSO MCFADDEN,
    *Plaintiff*,

v.

L&J WASTE RECYCLING, LLC, et al.
    *Defendants*.

Civil Action No. ELH-16-2744

**MEMORANDUM OPINION**

Alphonso McFadden, plaintiff, filed suit against defendants L&J Waste Recycling, LLC ("L&J"); Lenzie M. Johnson, III ("Johnson III"); and Lenzie M. Johnson, Jr. ("Johnson Jr."), alleging violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201, *et seq*.; the Maryland Wage and Hour Law ("MWHL"), as amended, Md. Code (2016 Repl. Vol.), §§ 3-401 *et seq.* of the Labor and Employment Article ("L.E."); and the Maryland Wage Payment and Collection Law ("MWPCL"), as amended, L.E. §§ 3-501 *et seq*. ECF 1. In particular, plaintiff claims that he was not paid time and a half for hours worked in excess of 40 hours a week during the period of his employment, from October 28, 2014, to January 14, 2016. *Id.* ¶¶ 21-23; ECF 32-2 (McFadden Affidavit), ¶ 4.

Through counsel, Johnson III and L&J moved to dismiss, or in the alternative, for summary judgment. ECF 5. And, through counsel, Johnson Jr. also filed a motion to dismiss, or in the alternative, for summary judgment. ECF 7. By Memorandum (ECF 19) and Order (ECF 20) of January 10, 2017, I denied both motions. In my Order, I directed the defendants to answer the Complaint on or before January 31, 2017. ECF 20.

In the interim, on January 27, 2017, counsel for defendants moved to withdraw from the case. ECF 21. The motion reflected compliance with Local Rule 101.2(a) and 1012(b). Therefore, I granted the motion to withdraw by Order of the same date. ECF 22.

In a letter dated January 27, 2017, the Clerk notified defendants of the implications of counsel's withdrawal. ECF 24. Then, by Order of February 7, 2017, I advised the defendants of the requirement that corporate entities, including limited liability companies, appear in court only through counsel. *See* ECF 25; *see also* Local Rule 101.1(a); 101.2(b). And, I granted L&J until March 13, 2017, to obtain counsel. ECF 25. Further, I directed all defendants to answer the Complaint by March 13, 2017. *Id*. at 2.

By March 27, 2017, no lawyer had entered an appearance for L&J, nor had defendants answered the Complaint. Therefore, on that date, I directed plaintiff to file a motion for clerk's entry of default as to each defendant, pursuant to Fed. R. Civ. P. 55(a), or show cause why such action is not appropriate. ECF 26. Plaintiff filed a Motion for Entry of Default as to all defendants on April 10, 2017. ECF 27. And, on April 20, 2017, the Clerk entered an order of default as to all defendants. ECF 29.

Thereafter, plaintiff filed a motion for default judgment (ECF 32, "Motion"), supported by several exhibits. ECF 32-1 through ECF 32-6. The exhibits include the Affidavit of George E. Swegman, Esq. (ECF 32-1); the Affidavit of Alphonso McFadden (ECF 32-2); "Plaintiff's Attorneys' Fees and Costs Affidavit" (ECF 32-3); and two "Non-Military" Affidavits signed by Mr. Swegman, concerning Johnson III (ECF 32-5) and Johnson Jr. (ECF 32-6). Defendants have not responded, and the time for them to do so has expired. *See* Local Rule 105.2.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion for Default Judgment as to liability and statutory damages.

But, I shall defer entry of an order awarding attorney's fees, pending the submission of a proper motion for such fees.

## I. Standard of Review

Rule 55(b) of the Federal Rules of Civil procedure governs default judgments.[1] In particular, Rule 55(b)(1) provides that the clerk may enter a default judgment if the plaintiff's claim is "for a sum certain or a sum that can be made certain by computation."[2] But, "[a] plaintiff's assertion of a sum in a complaint does not make the sum 'certain' unless the plaintiff claims liquidated damages; otherwise the complaint must be supported by affidavit or documentary evidence. *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (Grimm, M.J.).[3]

The United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on the merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993); *see Tazco, Inc. v. Director, Office of Workers' Compensation Program,* 895 F. 2d 949, 950 (4th Cir. 1990); *Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006). That policy is not absolute, however. Default judgment "'is appropriate when the "adversary process has been halted because of an essentially unresponsive party.'" *Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013) (quoting *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)).

---

[1] In the Motion, plaintiff states that he is seeking default judgment pursuant to Fed. R. Civ. P. 55(a). I note that Rule 55(a) governs the Clerk's entry of default, while Rule 55(b) governs the entry of default judgment.

[2] If the sum is not certain or ascertainable through computation, the court looks to Rule 55(b)(2).

[3] Judge Grimm now serves as a United States District Judge. But, he authored *Monge* when he was a United States Magistrate Judge.

As noted, defendants did not answer the suit after the Court denied their motions to dismiss. *See* Fed. R. Civ. P. 12(a)(4)(A); ECF 20. Therefore, plaintiff's factual allegations, other than those pertaining to damages, are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (stating that the court accepts as true the well pleaded factual allegations in the Complaint as to liability). But, the court must determine whether the undisputed factual allegations constitute a legitimate cause of action. *Id.* at 780-81; *see also* 10A Wright, Miller & Kane, *Federal Practice and Procedure*, § 2688 (3d ed. 2010 Supp.) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the court is satisfied that liability has been established, it must then determine the appropriate amount of damages. *Ryan*, 253 F.3d at 780-81. Allegations "relating to the amount of damages" are not deemed admitted based on a defendant's failure to respond to a suit. Fed R. Civ. P. 8(b)(6); *see Ryan*, 253 F.3d at 780 ("'[D]efault is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover'") (citation omitted); *see also Monge*, 751 Supp. 2d at 794 (same); *Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, Inc.*, No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."); *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09cv00004, 2009 WL 1872535, at *1 (W.D. Va. June 30, 2009) ("Upon default judgment, Plaintiff's factual allegations are accepted as true for all purposes excluding determination of damages.").

Rather, a court must make an independent determination regarding allegations as to damages. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). However, the court may also make a determination of damages without a hearing, so long as there is an adequate evidentiary basis in the record to support an award of the requested damages. *See Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) ("[T]he court may rely on detailed affidavits or documentary evidence to determine the appropriate sum."); *Monge*, 751 F. Supp. 2d at 795 (same); *Pentech Fin. Servs., Inc.*, Civ. No. 6:09cv00004, 2009 WL 1872535, at *2 (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" because plaintiff submitted affidavits and records establishing the amount of damages); *JTH Tax, Inc. v. Smith*, Civil No. 2:06CV76, 2006 WL 1982762, at *3 (E.D. Va. June 23, 2006) ("If the defendant does not contest the amount pleaded in the complaint and the claim is for a sum that is certain or easily computable, the judgment can be entered for that amount without further hearing.").

Notably, under Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *See In re Genesys Data Techs, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000) ("When a Complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages."). This is meant to enable the defendant to decide whether to expend the resources to defend the action. *Monge*, 751 F. Supp. 2d at 796.

## II. Discussion

### A. Liability

Plaintiff claims that defendants violated the provisions of the FLSA, MWHL, and MWPCL because he was not paid required overtime wages during his employment as a "Plant Foreman" for defendants. ECF 1, ¶¶ 19, 21-24; *see* 29 U.S.C. § 207; L.E. 3-415; L.E. 3-508. In particular, McFadden states that he was paid "straight time" for all hours worked, including weekly hours in excess of forty hours. ECF 1, ¶ 23.

Congress enacted the FLSA in 1938 "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)) (alterations in *Barrentine*). Thus, the FLSA is now "best understood as the 'minimum wage/maximum hour law.'" *Trejo v. Ryman Hospitality Properties, Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) (citation omitted); *see also Monahan v. County of Chesterfield, Va.*, 95 F.3d 1263, 1266–67 (4th Cir. 1996) ("The two central themes of the FLSA are its minimum wage and overtime requirements . . . . The FLSA is clearly structured to provide workers with specific minimum protections against excessive work hours and substandard wages.") (internal quotations omitted).

Of relevance here, the FLSA "'establishe[s] a minimum wage and overtime compensation for each hour worked in excess of 40 hours in each workweek' . . . ." *Perez v. Mortgage Bankers Ass'n*, ___ U.S. ___, 135 S. Ct. 1199, 1204 (2015) (quoting *Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. ___, 135 S. Ct. 513, 516 (2014)) (alterations in *Perez*). In particular, it established the "general rule that employers must compensate each employee 'at a

rate not less than one and one-half times the regular rate' for all overtime hours that an employee works." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) (quoting 29 U.S.C. § 207(a)(1)). Further, 29 U.S.C. § 216(b) states:

> Any employer who violates the provisions of . . . section 207 of this title shall be liable to the employee . . . affected in the amount of . . . their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages. . . . The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

The MWHL is the State's equivalent of the FLSA. *See Newell v. Runnels*, 407 Md. 578, 650, 967 A.2d 729, 771 (2009). Generally, the MWHL governs minimum wages and overtime under Maryland law. *See* L.E. §§ 3–413, 3–415, 3–420. Under L.E. § 3-415(a), "each employer shall pay an overtime wage of at least 1.5 times the usual hourly wage." And, L.E. § 3-420(a) provides that overtime wages shall be computed "on the basis of each hour over 40 hours that an employee works during 1 workweek."

The MWHL also authorizes an employee to bring an action against an employer to recover unpaid wages due under the statute. L.E. § 3–437. *See generally Friolo v. Frankel*, 373 Md. 501, 819 A.2d 354 (2003). It provides that, "[i]f an employer pays an employee less than the wage required under this subtitle, the employee may bring an action against the employer to recover the difference between the wage paid to the employee and the wage required under this subtitle," as well as for costs and attorney's fees. L.E. §§ 3-427(a) & (d).

The MWPCL "protects employees from wrongful withholding of wages upon termination." *Stevenson v. Branch Banking and Trust Corporation, t/a BB & T*, 159 Md. App. 620, 635, 861 A.2d 735, 743 (2004) (citing L.E. § 3–505). "The principal purpose of the Act 'was to provide a vehicle for employees to collect, and an incentive for employers to pay, back wages.'" *Medex v. McCabe*, 372 Md. 28, 39, 811 A.2d 297, 304 (2002) (citation omitted). The

MWPCL does not focus on "the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Friolo*, 373 Md. at 513, 819 A.2d at 362.

L.E. § 3–505(a), governing payment upon termination of employment, provides, in part:

> [E]ach employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated.

The MWPCL also provides an employee with the right to bring a civil suit against an employer to recover unpaid wages. *See* L.E. § 3–507.2(a); *Mohiuddin v. Doctor's Billing & Management Solutions, Inc.*, 196 Md. App. 439, 446, 9 A.3d 859, 863 (2010). In particular, under the MWPCL, if an employer fails to pay an employee all wages due on termination of employment, "after 2 weeks have elapsed from the date on which the employer is required to have paid the wages, the employee may bring an action against the employer to recover the unpaid wages." L.E. § 3–507.2(a); *see Baltimore Harbor Charters, Ltd. v. Ayd*, 365 Md. 366, 382–83, 780 A.2d 303, 312–13 (2001). If "a court finds that an employer withheld the wages of an employee in violation of [the MWPCL] and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs." L.E. § 3–507.1(b).

Plaintiff asserts in the Complaint (ECF 1) that L&J is owned and operated by Johnson Jr. and Johnson III, and that all three defendants were his "employer" under the definitions of the FLSA, MWHL, and MWPCL. ECF 1, ¶¶ 2, 5. In addition, he alleges that defendants had the power and authority to schedule employees and to control the duties of employees. *Id.* ¶¶ 9-14. And, he contends that defendants "made all decisions relating to the rates and methods of pay for

the Plaintiff . . . ." *Id.* ¶ 14. Furthermore, although plaintiff held the title "Plant Foreman", he alleges that he was actually working as a non-exempt employee. *Id.* ¶ 6.

McFadden also averred the enterprise coverage provisions under the FLSA. He alleged that the defendants' annual dollar volume of business exceeds $500,000. ECF 1, ¶ 3. And, he states that "Plaintiff engaged in interstate commerce by the nature of the duties he performed as part of his employment with Defendants." *Id.* ¶ 4.

And, McFadden has alleged that he was not paid time and a half for the hours worked in excess of forty hours per week. *See* ECF 32-2, ¶ 5; *see also* ECF 1, ¶¶ 22-24. Accordingly, accepting as true McFadden's averments and well-pled allegations, McFadden has established that defendants are liable to him under the FLSA, the MWHL, and the MWPCL.

### B. Damages

In the Complaint, plaintiff did not seek a specific sum certain. *See* ECF 1 at 10-11. But, as discussed, *infra*, plaintiff and his attorney have provided a reasonable method of computing damages based on plaintiff's rate of pay, estimated weekly hours of overtime, and number of weeks worked. *See* ECF 32-1, ¶ 5; ECF 32-2, ¶¶ 4-6. In addition, plaintiff seeks double damages under the FLSA and treble damages under the MWPCL. *See* ECF 1 at 11, ¶¶ f, g.

### 1. Damages Calculation

In those cases "in which wage and pay records, required to be kept by employers pursuant to 29 U.S.C. § 211(c), are not available, [the employee] must show the amount and extent of [his] improperly compensated work 'as a matter of just and reasonable inference.'" *Lopez v. Lawns 'R' Us*, DKC-07-2979, 2008 WL 2227353, at *3 (D. Md. May 23, 2008) (Schulze, M.J.) (quoting *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985)); *see Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) ("Due regard must be given

to the fact that it is the employer who has the duty under . . . the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed. Employees seldom keep such records themselves; even if they do, the records may be and frequently are untrustworthy. It is in this setting that a proper and fair standard must be erected for the employee to meet in carrying out his burden of proof."), *superseded by statute on other grounds, as stated in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C. Cir. 1972).

Notably, an employee's statement under oath "as to his recollection of the hours he worked and the pay he received, if considered credible by the trier of fact, is sufficient to establish a prima facie case of wages owed." *Lopez*, 2008 WL 2227353, at *3. And, if the employer does not successfully rebut the employee's statement, "[t]he Court may award damages based on Plaintiffs' testimony even though the amounts claimed are only approximated and not perfectly accurate." *Id.*[4]

Here, McFadden avers that he was paid $15 per hour. ECF 32-2, ¶ 5. Further, he states that he worked for defendants from approximately October 28, 2014 to January 14, 2016. *Id.* ¶ 4. And, plaintiff asserts that he worked "an average of forty-five (45) to fifty-five (55) hours per week." *Id.* ¶ 5. According to plaintiff, he received "straight time" for all hours worked and did not receive an overtime premium "for hours worked over forty (40) in a work week." *Id.*

In his Affidavit, plaintiff's counsel, Mr. Swegman, calculates plaintiff's unpaid wages as follows, ECF 32-1, ¶ 5:

---

[4] Judge Grimm explained in *Monge*, 751 F. Supp. 2d at 789 n.5: "In *Lopez*, 2008 WL 2227353, at *3 n.5, Magistrate Judge Schulze noted that '[t]hese standards apply to FLSA claims . . . . but application of the FLSA standards [to MWCPL claims as well] is appropriate in light of Maryland's similar requirement that employers keep records of employees' hours and wages' and that '[c]ases indicate that the same kind of evidence—including an employee's testimony—would be competent under Maryland law.'"

> a. Plaintiff, Alphonso McFadden, was employed by Defendants as a Plant Foreman from approximately October 28, 2014 to January 14, 2016, Plaintiff McFadden was a full time employee. He worked five (5) or six (6) days per week and was paid fifteen dollars ($15) per hour for all hours worked. Plaintiff worked conservatively, an average of forty-five (45) to fifty-five (55) hours per week. He was not paid an overtime rate for the hours of work in excess of forty (40) hours per week but was paid straight time for most but not all of his overtime.
>
> b. Absent full discovery and in a good faith effort to compute Plaintiff McFadden's damages, Plaintiff avers that from October 28, 2014 to January 14, 2016, he is owed approximately $4,725.00 in unpaid overtime wages. Sixty-three (63) weeks (X) 10 hours/week (X) $7.50 [(half time rate based on hourly rate noted)], plus an equal amount in liquidated damages and treble damages as well as reasonable attorney fees and costs pursuant to 29 UCS [sic] 216(6).

Consistent with Mr. Swegman's Affidavit, Plaintiff avers that he is owed $4,725.00 in unpaid wages. ECF 32-2, ¶ 7. In my view, the record supports that calculation.

### 2. Enhanced Damages

As indicated, plaintiff seeks double damages under the FLSA and treble damages under the MWPCL. ECF 1 at 11, ¶¶ f-g.

"Enhanced damages serve the dual purposes of compensating employees for consequential losses, such as late charges or evictions, that can occur when employees who are not properly paid are unable to meet their financial obligations; and of penalizing employers who withhold wages without colorable justification." *Lopez*, 2008 WL 2227353, at *4. Obviously, a prevailing plaintiff is entitled to recover liquidated damages under the FLSA or treble damages under the MWPCL, "but not both." *Paige v. CD#15CL2001, Inc.*, PWG-15-3691, 2017 WL 193499, at *5 (D. Md. Jan. 18, 2017).

Notably, numerous decisions in this District support the view that, in the absence of consequential damages, the plaintiff is entitled only to double damages under the FLSA, but not to treble damages under the MWPCL.

> "[I]t has become customary in this district to award double damages under the FLSA, but not treble damages under the MWPCL, when the 'defendants [do] not offer any evidence of a bona fide dispute to make liquidated damages inappropriate, [but the] plaintiffs [do] not offer any evidence of consequential damages suffered because of the underpayments.'"

*Carrillo v. Borges Constr., LLC*, GJH-13-641, 2016 WL 5716186, at *8 (D. Md. Sept. 30, 2016) (quoting *Villatoro v. CTS & Associates, Inc.,* No. DKC-14-1978, 2016 WL 2348003, at *3 (D. Md. May 4, 2016)) (alterations in *Carrillo*); *accord Vanegas v. Diaz Granados, Inc.*, No. PWG-15-2298, 2017 WL 345855, at *5 (D. Md. Jan. 24, 2017); *Doe v. G.M. Holdings, Inc.*, No. WMN-14-2933, 2016 WL 827247, at *3 (D. Md. Mar. 3, 2016); *Labuda v. SEF Stainless Steel, Inc.*, RDB-11-1078, 2012 WL 1899417, at *3 (D. Md. May 23, 2012); *Monge*, 751 F. Supp. 2d at 800 (Quarles, J.) (adopting the report and recommendation of Grimm, M.J.).

Plaintiff asserts that there was no bona fide dispute with respect to his right to receive the overtime wages in issue. *See, e.g.*, ECF 1, ¶ 24. However, plaintiff has not presented any evidence of consequential damages that he suffered as a result of any underpayment. *See* ECF 32-2. Accordingly, I shall award double damages under the FLSA, but not treble damages under the MWPCL. It follows that plaintiff is entitled to total statutory damages of $9,450.00.

### C. Attorney's Fees and Costs

Along with the Motion, plaintiff's attorney submitted an Affidavit pertaining to attorney's fees and costs. ECF 32-3. The affiant represents that he expended 45.97 hours on this case, and that his paralegals expended 58.87 hours on this case. Further, he avers that at the rate of $400 per hour for his work, the total for his services amounts to $18,388 in legal fees. At the rate of $150 per hour for the work of paralegals, counsel represents that the total for such work amounts to $8,735 in fees. *Id.* In addition, counsel seeks $700 in costs. *Id.* Thus, he seeks legal

fees and costs in the total amount of $27,823.00. *Id.* The Affidavit is supported by a summary worksheet (ECF 32-4) and a billing statement as of May 2, 2017. ECF 32-4.

Pursuant to 29 U.S.C. § 216(b), L.E. § 3-507.1 and L.E. § 3-427(d), the court may award attorney's fees as well as costs. In an FLSA action, the "[p]ayment of costs to a prevailing plaintiff is mandatory. . . ." *Lopez*, 2008 WL 2227353, at *7. Under the FLSA and other similar fee-shifting statutes, "the costs that may be charged to losing defendants include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" *Id.* (finding a $350 filing fee and a $200 service of process fee "well within the categories of normal and necessary costs of litigation that would normally be charged to paying clients").

In calculating the appropriate award of attorney's fees, the court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008); *see Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that, "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (citations and internal quotation marks omitted).

"The Supreme Court has indulged a 'strong presumption'" that the "lodestar" figure, as defined by the Court in *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), "represents a reasonable attorney's fee." *McAfee v. Boczar*, 738 F.3d 81, 88-89 (4th Cir. 2013). As indicated, to determine the lodestar figure, courts must multiply "'the number of reasonable hours expended times a reasonable rate.'" *Id.* (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009).

The court determines a reasonable fee by assessing whether the hours worked were reasonable or whether the request includes hours that were unnecessary or duplicative. Thus, the plaintiff "must show that the number of hours for which he seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." *Travis v. Prime Lending*, No. 3:07cv00065, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008) (concluding, after initially determining that the attorney's hourly rate was reasonable, that attorney's fees requested by plaintiff were reasonable, based on documentation of hours worked and the work completed); *Flynn v. Jocanz*, 480 F. Supp. 2d 218, 220–21 (D.D.C. 2007) (awarding requested attorney's fees based on affidavits and the record).

In evaluating the reasonableness of the requested legal fee, the court considers the twelve factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978); *see McAfee*, 738 F.3d at 88-89. The *Johnson* factors follow, 488 F.2d at 717-19:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to properly perform the legal service;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

Notably, when entering a default judgment, the court may make an award of attorney's fees for a lesser amount than the moving party requested. *See DirecTV v. Agee*, 405 F. Supp. 2d 6, 8 (D.D.C. 2005) (concluding, on granting default judgment, that "plaintiff's requested relief … for attorneys' fees [was] excessive" and awarding half of what was requested in the plaintiff's motion). In other words, a trial court is vested with discretion in determining the award of fees, given its "'superior understanding of the litigation.'" *Thompson v. HUD*, No. MJG-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078–79 (4th Cir. 1986)); *see also McAfee*, 738 F.3d at 88; *Robinson*, 560 F.3d at 243.

From my initial review of the fee submissions, some of the legal fees requested in ECF 32-4 appear to be excessive. For example, counsel seeks fees of $2,962.51 for 13 hours of attorney and paralegal time for drafting and reviewing the Complaint, which is about ten pages in length. *See* ECF 32-4 at 4. Given the relatively uncomplicated nature of this case and the fact that plaintiff never pursued the collective action embodied in the Complaint, such time appears excessive. Similarly, plaintiff seeks an award of more than $1,350 in fees regarding a Rule 11 letter that does not appear from the billing statement to have ever been sent. *See id.* at 5-6.[5] Counsel also billed time because plaintiff initially decided not to pursue the case and then changed his mind, without any explanation as to why such costs are attributable to defendants. Moreover, counsel seeks payment of fees for time expended when plaintiff apparently wanted a letter sent to another employer. And, counsel also billed duplicate attorney and paralegal time with respect to joint conferences. *See id.* at 5; *cf.* Local Rules, Appendix B, ¶ 2(d) ("Generally, only one lawyer is to be compensated for client, third party, and intra-office conferences . . . .").

---

[5] To be sure, Fed. R. Civ. P. 11(c)(2) requires counsel to serve a motion for sanctions on opposing counsel prior to filing the motion with the Court. Curiously, activities as incidental as sending reminders for appointments are reflected on the billing statement (ECF 32-4 at 5), yet there is no indication that the Rule 11 letter was actually sent.

These are the kind of issues that a lawyer should address in a memorandum on attorney's fees, in accordance with Local Rule 109.2(b).

Fed. R. Civ. P. 54(d) and Local Rule 109.2 are of particular relevance here. Rule 54(d) governs the award of costs and attorney's fees. Rule 54(d)(2)(A) provides: "A claim for attorney's fees and related nontaxable expenses *must be made by motion* unless the substantive law requires those fees to be proved at trial as an element of damages." (Emphasis added).

Local Rule 109.2 is titled: "Motions Requesting Attorneys' Fees." Local Rule 109.2(b) states (emphasis added):

> Any *motion* requesting the award of attorneys' fees *must be supported by a memorandum* setting forth the nature of the case, the claims as to which the party prevailed, the claims as to which the party did not prevail, a detailed description of the work performed broken down by hours or fractions thereof expended on each task, the attorney's customary fee for such like work, the customary fee for like work prevailing in the attorney's community, a listing of any expenditures for which reimbursement is sought, any additional factors which are required by the case law, and any additional factors that the attorney wishes to bring to the Court's attention.

Appendix B to the Local Rules provides additional provisions concerning the calculation and award of attorney's fees.

Here, plaintiff has merely submitted the Affidavit of counsel concerning attorney's fees and costs. But, no motion has been filed seeking the award of such fees and costs, as required by Fed. R. Civ. P. 54(d)(2)(A). Indeed, there is no reference in the Motion (ECF 32) indicating that plaintiff seeks attorney's fees. And, as noted, plaintiff has failed to file a memorandum regarding the award of attorney's fees, as required by Local Rule 109.2(b).

Accordingly, I shall deny the request for attorney's fees and costs, without prejudice to plaintiff's right to file a proper motion for the award of reasonable attorney's fees and costs, supported by a memorandum (and exhibits), in accordance with the rules and the principles outlined herein.

### III. Conclusion

In view of the foregoing, I shall GRANT the motion for default judgment (ECF 32) and enter judgment for damages in favor of plaintiff and against defendants, jointly and severally, in the total amount of $9,450.00. But, I shall defer entry of an order as to attorney's fees and costs, pending the submission of a proper motion and memorandum.

An Order follows, consistent with this Memorandum Opinion.

Date: July 14, 2017
/s/
Ellen Lipton Hollander
United States District Judge